NACHAMA HIRSCH, Plaintiff, v BENJAMIN HIRSCH et al., Respondents, and ROBERTS J. MUSSO, as Chapter 7 Trustee of BENJAMIN HIRSCH, Intervenor-Appellant. [50 NYS3d 426]—

Appeal by the intervenor, Robert J. Musso, from a judgment of divorce of the Supreme Court, Kings County (Eric I. Prus, J.), dated April 30, 2013. The judgment, upon a decision of that court dated February 1, 2013, rejecting the plaintiff's proposed fourth amended judgment, awarded relief as stated in the proposed judgment submitted by the defendant Benjamin Hirsch.

Ordered that the judgment is reversed, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, and the matter is remitted to the Supreme Court, Kings County, for the entry of the plaintiff's proposed fourth amended judgment.

The plaintiff commenced this action for a divorce and ancillary relief against the defendant Benjamin Hirsch (hereinafter the husband) in 1997. On October 30, 2000, the Supreme Court granted the plaintiff a divorce on the ground of constructive abandonment, but stayed entry of the judgment until the ancillary issues were resolved. The plaintiff filed an amended complaint naming as defendants the Hirsch Family Trust (hereinafter the HFT) and its trustees, as well as real estate

companies (hereinafter the Entities) that were transferred to the HFT by the husband after the commencement of the action. In her third amended complaint, the plaintiff alleged that the husband transferred the Entities to the HFT, and transferred certain real properties to the Entities in order to defeat her right to equitable distribution of the marital assets. The plaintiff also alleged that the husband deposited the proceeds of a foreclosure of a mortgage owned by one of the Entities (hereinafter the Chatsworth mortgage proceeds) into an HFT bank account and used all of the proceeds in the account for personal use. The plaintiff further alleged that the husband used HFT funds to pay personal expenses and otherwise used purported HFT properties as if they were his own. The plaintiff asserted a cause of action to impose a constructive trust on the marital assets or to set aside the fraudulent transfers, such that the properties and Entities would be marital property subject to equitable distribution.

After a trial, the Supreme Court issued a decision dated May 10, 2002. The court determined that the plaintiff failed to prove the elements necessary for the imposition of a constructive trust, but that she succeeded in demonstrating that the conveyances constituted actual and constructive fraud under Debtor and Creditor Law §§ 275 and 276. The court further found that the HFT "is a familial entity and functions as the Husband's 'alter ego' " since he controlled it through his role as investment advisor and his familial relationship with two of the three trustees. The evidence revealed a pattern in which the husband received funds from various entities owned by the HFT without the observance of any formalities. The court found that extensive commingling of funds occurred between alleged HFT entities and the personal and other business accounts of the husband, and that the transfers were made to impair the plaintiff's equitable distribution claim.

The Supreme Court stated in its decision that none of the transferred properties should remain in the HFT because the HFT received them as a result of the husband's fraudulent conveyances. The court declared that "[t]itle to all of the above-discussed properties and ownership of shares in the various limited liability companies created shall revert to the husband's name since he held title and owned the shares before he fraudulently conveyed them after the commencement of the action." The court directed equitable distribution of the marital property, awarding the plaintiff 50% of the marital estate, or $2,444,111.80, which included the value of the title to 10 properties (seven "former Trust properties," two held by the

husband, and one held by her), as well as a distributive award of $2,111,048.20, payable in 15 yearly installments.

Prior to entry of judgment on the May 2002 decision, the husband filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York (hereinafter the Bankruptcy Court) and caused the Entities to do the same. Although the Supreme Court entered judgment on the decision later in 2002, that judgment was held void by the Bankruptcy Court as violative of the automatic bankruptcy stay (see 11 USC § 362 [a]). The void 2002 judgment would have directed the defendants to transfer the two properties held by the husband and the seven properties held by the Entities directly to the plaintiff.

The Bankruptcy Court further determined that the properties vested in the Entities or the husband on the date of filing (see Hirsch v Coney Is. Land Co., 2004 US Dist LEXIS 29729, *5 [ED NY, Dec. 13, 2004, No. 04 CV 2282 (CBA)]). Since the Supreme Court, in the May 2002 decision, chose to set aside the transfers and not to transfer the real properties directly to the plaintiff, her claim against the Entities' bankruptcy estates was expunged. The Entities' confirmed plan of reorganization provided that the Entities were to retain the real properties free and clear of all claims except those provided for in the plan, although the Entities agreed to pay $136,164.74 to the husband, representing the stipulated value listed in the May 2002 decision of the seven properties the Supreme Court found had been fraudulently transferred to them. The plaintiff was awarded an unsecured claim against the husband's bankruptcy estate in the sum of $2,343,707.94, representing the distributive award plus the stipulated values of the properties held by the husband and the Entities that she was supposed to receive.

The plaintiff moved in the Bankruptcy Court for relief from the automatic stay, and the Bankruptcy Court granted the motion to the extent of allowing the plaintiff to pursue entry of a judgment of divorce in the Supreme Court. Thereafter, the Bankruptcy Court rejected the plaintiff's first three proposed amended judgments of divorce as violative of the stay. In addition, the Bankruptcy Court granted the plaintiff's motion to convert the husband's Chapter 11 bankruptcy case to a Chapter 7 bankruptcy case, and a Trustee was appointed. Subsequently, the Trustee successfully moved to modify the stay to permit the plaintiff to settle a divorce judgment effectuating the Supreme Court's findings setting aside the fraudulent transfers to the HFT of ownership interests in the Entities and the Chatsworth mortgage proceeds, and adjudging the HFT to be

the husband's alter ego, and to permit the Trustee to intervene in the divorce action to join in advocating for a proposed fourth amended judgment. The husband received a discharge from bankruptcy on November 2, 2011.

Thereafter, the plaintiff presented to the Supreme Court a proposed fourth amended judgment, which would set aside the transfers to the HFT of the Entities and the Chatsworth mortgage proceeds, adjudge the HFT to be the husband's alter ego, and award the plaintiff a distributive share of $2,343,707.94, representing the original distributive award plus the stipulated values of the properties she would not receive, with the recognition that the husband had been granted a discharge in bankruptcy that relieved him of personal liability for that debt. The Trustee successfully moved to intervene in the action, and requested entry of the plaintiff's proposed fourth amended judgment. The husband, the HFT, and the Entities all argued that the Supreme Court was bound to enter the original judgment contemplated in 2002. In a decision dated February 1, 2013, the Supreme Court determined that it would enter the original 2002 judgment because to do otherwise would constitute impermissible appellate review by the court. The husband presented a judgment which, aside from its preliminary recitals, was identical to the void 2002 judgment, and the Supreme Court entered that judgment. The Trustee appeals.

Preliminarily, contrary to the husband's contention, the Trustee is aggrieved by the entry of the divorce judgment, since he intervened in the action and requested relief that was denied (see CPLR 5511; Matter of Eric W. [Tyisha W.], 110 AD3d 1000 [2013]; Mixon v TBV, Inc., 76 AD3d 144, 156 [2010]).

The Trustee correctly contends that the Supreme Court, in its decision dated February 1, 2013, erred in determining that entry of a form of judgment different from the one contemplated in 2002 would constitute impermissible appellate review by the court. The original 2002 judgment was voided by the Bankruptcy Court, such that, in effect, it was never entered (see Valiotis v Psaroudis, 69 AD3d 610 [2010]; In re Colonial Realty Co., 980 F2d 125, 137 [2d Cir 1992]). As the Bankruptcy Court granted relief from the stay to permit entry of a divorce judgment, a judgment based on the May 2002 decision after trial may now be entered (see Nelson, L.P. v Jannace, 87 AD3d 731 [2011]). The judgment must conform strictly to the court's decision (see Matter of Richard H., 144 AD3d 799 [2016]; McLoughlin v McLoughlin, 63 AD3d 1017, 1019 [2009]; Curry v Curry, 14 AD3d 646 [2005]), but need not be in the same form originally proposed in 2002.

The original void judgment contemplated directing the Entities and the husband to transfer nine properties directly to the plaintiff. As the Trustee correctly contends, these provisions are now barred by the Entities' and the husband's discharges in bankruptcy (*see* 11 USC § 524 [a] [1], [2]). Since those provisions have no effect, the distributive award in the original void judgment does not reflect the plaintiff's full equitable distribution award as determined in the May 2002 decision after trial.

In contrast, the fourth amended judgment proposed by the plaintiff and the Trustee would effectuate the findings of the decision after trial that the husband's transfers to the HFT of the ownership interests in the Entities and the Chatsworth mortgage proceeds should be set aside and that the HFT is the husband's alter ego, while providing the plaintiff with a distributive award reflective of her share of equitable distribution found in the decision after trial. While the bankruptcy proceedings now bar transfer of the properties from the Entities, the HFT never filed for bankruptcy. Thus, provisions reaching the assets of the HFT are not barred by the bankruptcy orders. Moreover, such provisions would permit the Trustee to marshal assets that the decision after trial found actually belonged to the husband as part of the husband's bankruptcy estate for the benefit of the husband's creditors, including the plaintiff. While the Entities paid the husband's bankruptcy estate the stipulated value of the real properties that were fraudulently transferred to them, the Trustee has represented that, without the fraudulent transfers of the Entities themselves being remedied, the husband's bankruptcy estate contains insufficient funds to pay the couple's joint IRS tax debt, which has priority over the plaintiff's unsecured claim. Thus, the only way that the plaintiff may receive any of the $2,343,707.94 remaining to be paid to her as equitable distribution is by remedying the fraudulent transfers to the HFT found in the May 2002 decision after trial. The provisions subjecting the assets of the HFT to the husband's bankruptcy estate are based on explicit findings in the decision after trial, and are meant to effectuate the plaintiff's equitable distribution award.

Accordingly, the proposed fourth amended judgment sought by the plaintiff and the Trustee strictly conforms to the May 2002 decision after trial, is effective in light of the bankruptcy proceedings, and should have been entered by the Supreme Court (*see Matter of Richard H.*, 144 AD3d 799 [2016]; *Mc-Loughlin v McLoughlin*, 63 AD3d at 1019; *Curry v Curry*, 14 AD3d 646 [2005]).

The defendants' remaining contentions are without merit. Leventhal, J.P., Hall, Hinds-Radix and Duffy, JJ., concur.